CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DEMETRIUS D. WALLACE,              )
    Plaintiff,                    )      Civil Action No. 7:24-cv-00194
                                   )
v.                                 )
                                   )      By:  Elizabeth K. Dillon
MASSINGILL, *et al.,*              )           Chief United States District Judge
    Defendants.                   )

**MEMORANDUM OPINION**

Plaintiff Demetrius D. Wallace, a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights when he was housed at Red Onion State Prison. (Compl., Dkt. No. 1.)  Before the court is a motion to dismiss by defendants S. Hibbits and L. Jenkins (Dkt. No. 31) and a motion for summary judgment by defendants Massingill, Milgrim, and Smith (Dkt. No. 39).  Wallace did not respond to either motion.  He also did not respond to an order to identify ten John Does that he named as defendants in his complaint. (Dkt. No. 25.)

For the reasons stated below, defendants' motions to dismiss and for summary judgment will be granted, and this matter will be dismissed in its entirety.

I.  BACKGROUND

A.  **Wallace's Complaint and Procedural History**

Wallace complains of an incident at Red Onion on November 25, 2023, wherein he complained to B. Dotson and Milgrim about problems with his sink and toilet.  He was met with degrading comments and aggressive behavior.  He asserts that Milgrim handcuffed him too tightly, grabbed his arm causing pain, and placed him in segregation ("the hole").  Sgt. Smith, along with unnamed others, placed him in the hole, and Sgt. Smith maced him.  After the macing, the unnamed officers slammed Wallace onto the concrete floor and placed their knees

on his neck and back, causing pain.  Lt. Massingill then responded with other unknown officers who told him to stand.  Once standing, Wallace asked that his leg shackless be loosened.  He was assaulted by "all of them" and thrown in a segregation cell.  Wallace sought medical attention from everyone he saw passing by his cell, but he did not receive any help.

Wallace also made allegations against a Jane Doe defendant.  The complaint alleges that Jane Doe is "legally responsible to check all inmates after they are involved in any type of physical altercation" (Compl. ¶ 42) and that she violated Wallace's Eighth Amendment rights by failing to provide adequate medical care (Compl. ¶ 80).

Liberally construed, Wallace's complaint alleges the following claims: (1) Eighth Amendment claim for excessive force; (2) Eighth Amendment claim for deliberate indifference to medical needs; (3) Eighth Amendment claim for failure to protect from other officers (a bystander liability claim); (4) tort claims for assault and battery; and (5) Fourteenth Amendment due process claim for placement in segregation.

On March 31, 2025, the court granted a motion to dismiss all claims against defendants Chadwick S. Dotson, Gregory Holloway, Rick White, Johnny Hall, and Bradley Dotson.  (Dkt. No. 28.)  The court also granted a partial motion to dismiss by Joshua Massingill, Terry Smith, and Jordan Milgrim.  The Eighth Amendment deliberate indifference claims and the Fourteenth Amendment due process claims against Joshua Massingill, Terry Smith, and Jordan Milgrim were dismissed, and the Eighth Amendment failure to protect claim against Milgrim was dismissed.  Finally, the court dismissed Wallace's claims for declaratory relief and injunctive relief and his claims for monetary relief against defendants in their official capacities.  (*Id.*)

After this order was entered, S. Hibbits and L. Jenkins appeared by counsel and filed a motion to dismiss.  (Dkt. No. 31.)  These parties were identified by Wallace as Jane Doe

2

defendants.  (Dkt. No. 25.)  A *Roseboro*[1] notice was entered on May 2, 2025.  (Dkt. No. 34.)

Massingill, Milgrim, and Smith moved for summary judgment, and a *Roseboro* notice for that

motion was entered on June 10, 2025.  (Dkt. Nos. 39, 41.)  Wallace did not respond to either

motion.

## C.  Facts in Support of Summary Judgment by Massingill, Smith, and Milgrim

In support of their motion for summary judgment, Massingill, Smith, and Milgrim

submitted the affidavit of T. Still, the Institutional Ombudsman at Red Onion.  Still is

responsible for maintaining grievance files on inmates at ROSP.  (Still Aff. ¶ 1, Dkt. No. 40-1.)

Massingill, Smith, and Milgrim argue that they are entitled to summary judgment on the claims

against them because Wallace did not exhaust his administrative remedies.  The court agrees.

### 1.  Grievance procedure

Pursuant to Operating Procedure 866.1, Offender Grievance Procedure, grievances are to

be submitted within 30 calendar days from the date of the incident.  Before filing a regular

grievance, the inmate must demonstrate he made a good faith effort to resolve his complaint.

This can be done by submitting a written grievance form to the appropriate department head.

Prison staff should respond to a written complaint within 15 calendar days.  (Still Aff. ¶ 6.)  A

response should be given within 15 calendar days to ensure that it is provided prior to the

expiration of the 30-day time period.  (*Id.*)

All Virginia Department of Corrections inmates are oriented to the Offender Grievance

Procedure when they are received into VDOC and when they are transferred to a different

facility, including when transferred to Red Onion.  (Still Aff. ¶ 11, Encl. B (Wallace's signed

Red Onion State Prison Acknowledgement of Formal Intake Orientation).)  Wallace accessed the

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

grievance procedure at Red Onion on several occasions.  (Still Aff. ¶ 11, Encl. C (Wallace's

Inmate Grievance record).)

### 2.  Wallace's grievance activity

On November 26, 2023, Wallace signed a written complaint, ROSP-23-WRI-00584,

claiming that he tried to tell correctional staff about issues he was having with his sink and toilet,

and in response, staff became hostile.  (Still Aff. ¶ 13, Encl. D.)  The complaint was received on

November 30 and Major Hall responded to the complaint on December 11, 2023.  Wallace did

not submit a regular grievance on these issues.  (*Id.*)  Wallace also signed a written complaint,

ROSP-23-WRI-00585, claiming that on November 25, 2023, Sgt. Smith maced him for no

reason.  (Still Aff. ¶ 14, Encl. E.)  Major Hall responded, and Wallace did not submit a regular

grievance.  (*Id.*)

Next, Wallace signed a written complaint, ROSP-23-WRI-00618, dated November 28,

2023.  Still describes this complaint as asking that video footage be preserved from November

25, and that is the only express request Wallace included in his complaint.  (Still Aff. ¶ 14, Encl.

F.)  But the complaint also referenced that Smith, Dotson, Milgram, "and other John Does" were

involved in the November 25 incident and that Wallace was sprayed with OC spray "and

assaulted twice while in restraints with 2 officers holding [him] in handcuffs and shackles."

(Still Aff., Encl. F.)  Intel Officer Mullins responded that VDOC saved the footage.  Wallace did

not submit a regular grievance.  (Still Aff. ¶ 15.)

Wallace submitted a written complaint, ROSP-24-WRI-00050, claiming that his

grievances were returned without a reason.  (Still Aff. ¶ 16, Encl. G.)  In that written complaint,

he stated that he was "assaulted on camera for no reason at all."  (Still Aff., Encl. G.)  Operations

Manager Skyes responded that regular grievances were not rejected for intake but may have been

returned because they were unsigned, which Wallace also referenced in the complaint itself. Further, "Wallace maintained the ability to resubmit any Regular Grievances returned to him which were not processed." (Still Aff. ¶ 19.)  The January 2, 2024 response also notified Wallace that he currently had "3 written complaints pending and no grievances." (Still Aff., Encl. G.)  Wallace did not submit a regular grievance on this complaint. (Still Aff. ¶ 16.)

On December 30, 2023, Wallace signed a written complaint, ROSP-24-WRI-00053, claiming that he was assaulted and maced and wanted footage saved for his civil suit. (Still Aff. ¶ 17, Encl. H.)  Red Onion staff received the written complaint on January 2, 2024.  Major Hall responded that this issue was already addressed in ROSP-23-WRI-00585.  Wallace did not submit a regular grievance. (*Id.*)

Wallace did not submit any written complaints pertaining to excessive force and assault and battery allegations against Massingill, and he also did not file any written complaint or regular grievances regarding failure to protect contentions against Masingill. (Still Aff. ¶ 18.) Although Still avers that Wallace did not submit any written complaints "specifically" pertaining to excessive force or assault and battery against Milgrim (*id.*), at least one of his written complaints—one requesting only that video coverage be retained—referenced Milgrim as one of the officers who assaulted him. (Still Aff., Encl. F.)  Regardless, Wallace did not pursue a regular grievance after his written complaint relating to Sgt. Smith using excessive force and macing him, nor did he file regular grievances arising from the incident against Massingill or Milgrim. (Still Aff. ¶ 19.)

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's

legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by pro se litigants must be construed liberally.  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).  "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  A pro se complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### B.  Motion to Dismiss by Jenkins and Hibbits

As noted, Jenkins and Hibbits were identified by Wallace as Jane Doe defendants. Wallace, however, does not distinguish between two different Jane Does in his allegations. Thus, the court cannot attribute any of the conduct alleged to either of the defendants, and the allegations are insufficient to establish that these defendants were personally involved in any sort of constitutional violation.  "A section 1983 plaintiff must also plausibly allege the personal involvement of a defendant." *Moore v. Barnes*, No. 2:23-CV-56-D, 2025 WL 2841495, at *31 (E.D.N.C. Sept. 30, 2025) (citing *Iqbal*, 556 U.S. at 676–77; *Wright v. Collins*, 766 F.2d 841,

6

850 (4th Cir. 1985)).

The motion to dismiss by Jenkins and Hibbits will be granted

## C.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant."  *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.

## D.  Motion for Summary Judgment by Massingill, Smith, Milgrim Based on Exhaustion

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A defendant has

the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The record in this case shows that Wallace initiated various written complaints related to the events in this lawsuit, but he did not pursue them through all applicable levels of review by filing any regular grievances or subsequent appeals. Thus, Wallace did not exhaust his administrative remedies with respect to his claims against Massingill, Smith, or Milgrim.

As the defendants have made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff. *Draper v. Ohai*, Civil Action No. 7:23-cv-00248, 2025 WL 270051, at *5 (W.D. Va. Jan. 22, 2025) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)). Wallace did not meet this burden because he failed to respond to the summary judgment motion and the evidence presented therein by the defendants. Wallace's verified complaint includes generic statements asserting that he exhausted his administrative remedies. (Compl. at 15–16.) These statements are insufficient to create an issue of fact to survive summary judgment as they are plainly contradicted by the record before the court. *See Thomas v. Harwood*, 1:17-cv-288-FDW, 2019 WL 2420407, at *4 (W.D.N.C. June 7, 2019) (granting summary judgment where "Plaintiff did not respond to the

8

summary judgment motion, his verified complaint can be considered as an opposing affidavit on summary judgment and his version of the events contained in his Amended Complaint is blatantly contradicted by all available evidence") (citing *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009)).

For these reasons, the court will grant summary judgment to defendants Massingill, Smith, and Milgrim because of Wallace's failure to exhaust his administrative remedies.

**E.  John Doe Defendants**

As the court stated at the outset of this opinion, Wallace was directed to provide information to identify the defendants named John Does # 1–10, and Wallace did not respond to the motion.  Wallace was warned that failure to provide the requested information would result in the claims against these defendants being dismissed without prejudice.  (Dkt. No. 21.) Pursuant to that order, Wallace's claims against these defendants will be dismissed without prejudice for failure to prosecute.  Fed. R. Civ. P. 41(b).

### III.  CONCLUSION

The court will issue an order granting the pending motion for summary judgment, granting the pending motion to dismiss, dismissing the claims against the John Doe defendants, and striking this case from the active docket of the court.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge